MICHAEL ROSE *et al.*, Plaintiffs-Appellees, v. THEODORE MAVRAKIS, Defendant-Appellant (Costas Mavrakis *et al.*, Defendants).

First District (3rd Division)    No. 1—03—1064

Opinion filed September 30, 2003.

Mandell, Menkes & Surdyk (Bruce N. Menkes, of counsel), and Carol A. Mengel, both of Chicago, for appellant.

Winston & Strawn, of Chicago (Kurt L. Schultz, Gregory C. Vamos, and M. Faiyaz Hussain, of counsel), for appellee Constantinos Piladakis.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Theodore Mavrakis appeals from a circuit court order requiring him to comply with an oral settlement agreement the court found he had entered into with Constantinos Piladakis in these related actions. For the following reasons, we affirm.

The instant litigation arises out of the ownership and operation of a casino located in Greece. That casino is wholly owned by Theros International Gaming, Inc. (Theros), an Illinois corporation. Mike Rose, Theodore Mavrakis (Mavrakis), and Costas Mavrakis (Costas) have been shareholders and directors of Theros since its incorporation. On July 14, 1998, Rose initiated this litigation by filing a complaint, docketed as case number 98 CH 09279, against Mavrakis. Rose later amended his complaint, adding as defendants Costas and Theros. In the amended complaint, Rose alleged various causes of action, including fraud, breach of fiduciary duties, civil conspiracy, breach of the corporation's shareholders' agreement, breach of contract, and conversion of corporate funds and also sought relief pursuant to sections 8.35(b) and 12.56 of the Business Corporation Act of 1983 (805 ILCS 5/8.35(b), 12.56 (West 1998)).

On March 19, 2002, Mavrakis filed a counterclaim in case number 98 CH 09279, seeking declaratory and injunctive relief against Rose, Costas, and Theros, as well as against Constantinos Piladakis and Sadoula Paleodemou, both of whom recently had been elected to Theros' board of directors.

On August 23, 2002, Piladakis filed a single-count complaint, docketed as case number 02 CH 15460, against Costas. Subsequently, Piladakis filed an amended complaint which added Rose as a plaintiff and Mavrakis as a defendant and alleged causes of action for breach of fiduciary duty and breach of contract and sought shareholder remedies pursuant to section 12.56 of the Business Corporation Act of 1983 (805 ILCS 5/12.56 (West 2000)).

On September 4, 2002, Mavrakis and Costas each moved separately to consolidate case number 02 CH 15460 with case number 98 CH

09279. On September 5, 2002, the motions to consolidate were denied, but both cases were assigned to the same judge as related cases.

On November 18, 2002, the trial court entered an order scheduling a settlement conference for the related cases on December 23 and 24, 2002. Although the record does not contain a transcript of proceedings or a written order from either of those dates, all parties to this appeal agree that the settlement conference took place as scheduled.

On January 21, 2003, Piladakis filed a "Motion to Enter and Enforce the Stipulated Settlement Agreement." In that motion, Piladakis alleged that, on December 24, 2002, he and Mavrakis "entered into a 'hand shake' agreement to settle their disputes" and that the "precise terms and details of the agreement reached" were "to be memorialized in writing and presented to the Court for its approval on January 23, 2003." He further alleged that, by January 20, 2003, "both parties had agreed to all the material terms in the Agreement" but that, nonetheless, Mavrakis thereafter refused to sign a written agreement.

Mavrakis responded to Piladakis' motion, denying that the parties had reached a settlement agreement on December 24, 2002. He asserted instead that, on that date, the parties left the court's chambers "recognizing that it was essential that they enter into a written understanding in order to resolve numerous essential terms that had yet to be addressed."

On March 12, 2003, the trial court entered a written order granting Piladakis' motion to enforce the settlement agreement "for the reasons stated on the record in open court." The transcript of the proceedings from that date reveals that, in ruling on the motion, the trial judge stated that "extensive pretrial settlement conferences" had been conducted on December 23 and 24, 2002, in his chambers. According to the judge, "at times" the attorneys for all parties, including Costas and Rose, were present and "at times" Piladakis, Mavrakis, and Rose themselves were present in chambers while the conference was taking place. The judge acknowledged that he was not present during all of the settlement conference but, nonetheless, found that an agreement had been reached "as to the essential terms of a settlement between Constantinos Piladakis and Theodore Mavrakis." He stated as follows:

> "[T]hose terms were repeated by the Court in the presence of counsel for Piladakis and Theodore Mavrakis as well as Theodore Mavrakis himself. It was agreed between counsel that a written agreement would be prepared, but at the Court's insistence both sides agreed that a settlement had been reached, subject only to contingency set forth within the terms of the agreement itself."

The trial judge went on to set forth the terms of which the parties' settlement agreement consisted. According to the judge, the settlement agreement provided, *inter alia*, that: (1) the settlement will resolve all claims between Mavrakis and Piladakis; (2) upon the receipt of an approval from the Casino Commission of Greece, Mavrakis will sell all of his shares of Theros stock to Piladakis for the sum of $9 million, which amount is payable in a series of installment payments due over a period of 20 months; (3) Mavrakis and Piladakis will both cooperate in seeking the requisite approval from the Casino Commission of Greece; (4) Mavrakis will release all of his claims against Rose; and (5) Piladakis will secure a release of Rose's claims against Mavrakis. For our purposes, it is not necessary to set forth the remainder of the terms enumerated by the trial judge. The judge ordered that the parties "without unnecessary delay *** initiate the action called for under the agreement." Mavrakis then brought the instant appeal pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).

Before the trial court, Mavrakis argued that the parties did not reach a settlement agreement during the settlement conference conducted on December 24, 2002. On appeal, however, Mavrakis does not contest the trial court's finding that, on that date, the parties reached an oral agreement as to the terms enumerated by the court in its March 12, 2003, ruling. Rather, Mavrakis asserts that the trial court erred in ordering the parties to perform under that oral agreement because: (1) the agreement is lacking in certain material terms and, as such, does not constitute a contract; and (2) even if the oral settlement agreement does constitute a contract, it is unenforceable because it violates section 1 of the Frauds Act (740 ILCS 80/1 (West 2000)).

We will begin by addressing Mavrakis' contention that the parties' settlement agreement does not contain enough material terms to constitute a contract. Specifically, Mavrakis alleges that the settlement agreement leaves unresolved the following terms, which he maintains are material to the formation of a contract: (1) when the closing on the sale of Mavrakis' shares of stock to Piladakis will take place; (2) when the releases to be given by Piladakis and Rose to Mavrakis will be executed; and (3) the consequences of a default by Piladakis.

■ A settlement agreement is in the nature of a contract and is governed by principles of contract law. *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731, 653 N.E.2d 1365 (1995); *James v. Lifeline Mobile Medics*, 341 Ill. App. 3d 451 (2003). "[I]n order for a valid contract to be formed, an 'offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain.' (J. Will-

iston, Contracts §§ 38 through 48 (3d ed. 1957); 1 Corbin, Contracts §§ 95 through 100 (1963).)" *Academy Chicago Publishers v. Cheever,* 144 Ill. 2d 24, 29, 578 N.E.2d 981 (1991). Stated otherwise, in order for a contract to be capable of enforcement, its terms and provisions must enable the court to determine what the parties have agreed to do. *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.,* 337 Ill. App. 3d 501, 504-05, 786 N.E.2d 574 (2003). Although some terms of a contract may be missing or left to be agreed upon, the parties' failure to agree upon an essential term of a contract indicates that the mutual assent required to make a contract is lacking and, thus, there is no enforceable contract. *Trittipo v. O'Brien,* 204 Ill. App. 3d 662, 672, 561 N.E.2d 1201 (1990). The lack of nonessential details, however, will not render a contract unenforceable. *First National Bank of Oak Lawn v. Minke,* 99 Ill. App. 3d 10, 14, 425 N.E.2d 11 (1981).

Initially, we consider Mavrakis' contention that the parties' settlement agreement does not constitute a contract because it is silent as to the timing of the closing on the sale of Mavrakis' shares of stock to Piladakis. Specifically, Mavrakis notes, the agreement is silent as to the period of time allotted for the parties to obtain approval for the transfer of the shares from the Casino Commission of Greece. Mavrakis is correct that the settlement agreement, as set forth by the trial court at the hearing on Piladakis' motion to enforce, is silent on this issue. After stating the terms of the settlement agreement on the record, the trial court stated as follows:

"Other than those previously reflected, no time parameters were set. Both parties indicating an interest in expedition which this Court finds to be an agreement to perform within a reasonable period of time. Both parties have argued for a specific time frame, from 4 to 6 weeks to 180 days, as representing the period of time during which performance in terms of pursuing approval and obtaining approval of the Greek Casino Commission should be performed. Since performance has not begun under the agreement, it would be premature for the Court to decide specifically what constitutes a reasonable time period or, conversely, whether or not more than a reasonable time period has expired. I believe the Court should say nothing further with regard to that issue other than that each party is to initiate their performance and continue in that performance without any just cause for delay to obtain the approval of the Greek Casino Commission."

■ In support of his contention that the agreement's failure to specify the timing for the parties to obtain the approval of the Casino Commission of Greece and for Mavrakis to transfer his shares of stock to Piladakis renders it unenforceable, Mavrakis relies upon *Academy Chicago Publishers v. Cheever,* 144 Ill. 2d 24, 29, 578 N.E.2d 981

(1991). In that case, the Illinois Supreme Court found that a written agreement to publish a book of short stories which failed to provide the date on which publication would occur was unenforceable. We find *Academy Chicago Publishers* to be distinguishable, however, in that a date for publication of the book was only one of numerous terms missing from the agreement there, which also lacked any terms as to the minimum or maximum number of stories necessary for publication, who would determine what stories would be included in the book, the date for delivery of the manuscript, or the criteria which would render the manuscript satisfactory to the publisher. The supreme court concluded that the agreement did not contain sufficient terms to allow a determination as to whether it had been breached. *Academy Chicago Publishers*, 144 Ill. 2d at 29-30. Such is not the case here. In the instant case, the terms of the settlement agreement, as set forth by the trial court, provided, *inter alia*, that: upon receiving approval from the Casino Commission of Greece, Mavrakis will sell his shares of Theros stock to Piladakis for a sum of $9 million to be paid in a specified series of installments; the parties will cooperate in taking whatever steps are necessary to obtain the necessary approval for the stock transfer; Mavrakis will release all claims he has against Piladakis and Rose; and Piladakis will release all claims that he has against Mavrakis and will procure a release of Rose's claims against Mavrakis. Thus, the agreement sets forth the essential and material obligations of the parties. The mere fact that the settlement agreement does not set a specific time limit within which the approval of the Casino Commission of Greece must be received and the transfer of shares take place does not prevent a determination as to what the parties thereto have agreed to do or whether a party has breached his obligations under the agreement. Rather, when a time for performance of an obligation under a contract is not specified, a reasonable time will be implied. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 890, 652 N.E.2d 1233 (1995); *Murphy v. Roppolo-Prendergast Builders, Inc.*, 117 Ill. App. 3d 415, 418, 453 N.E.2d 846 (1983). Accordingly, we reject Mavrakis' contention in this regard.

Mavrakis next asserts that the parties' settlement agreement does not constitute a contract because, while the agreement provides that Piladakis and Rose are to release their claims against Mavrakis, it does not specify when these releases are to be executed. For support, Mavrakis relies on *Poole v. Mosley*, 307 Ill. App. 3d 625, 718 N.E.2d 621 (1999). We find this reliance to be misplaced. Contrary to Mavrakis' assertion, the term as to which the parties in *Poole* disagreed was not the timing of the execution of a release. Rather, the parties there disagreed as to whether the dismissal of the plaintiff's action

was required before the defendant's obligation to tender payment under the agreement was triggered. *Poole*, 307 Ill. App. 3d at 627. As stated earlier, when a time for performance of an obligation under a contract is not specified, a reasonable time will be implied (*Meyer*, 273 Ill. App. 3d at 890; *Murphy*, 117 Ill. App. 3d at 418). Accordingly, we cannot say that the absence of a term specifying when the releases called for in the settlement agreement in the instant case were to be issued bars a finding that the parties' settlement agreement constitutes a contract.

■ Finally, we address Mavrakis' contention that the settlement agreement does not constitute a contract because it fails to specify the consequences of a default by Piladakis. Mavrakis does not offer, and we do not find, any authority in support of the contention that terms setting forth the consequences of a party's default are material to the formation of a contract. As with any contract, in the event that either party fails to perform in accordance with the terms of the settlement agreement, the aggrieved party may pursue remedies for breach of the contract. The failure of an agreement to set forth the consequences of a default by a party does not prevent the formation of a contract.

■ Having rejected Mavrakis' assertion that the parties' settlement agreement does not constitute a contract because it lacks material terms, we now turn to his alternate contention that the settlement agreement is unenforceable because it violates section 1 of the Frauds Act, which provides in relevant part as follows:

> "No action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." 740 ILCS 80/1 (West 2000).

The terms of the settlement agreement at issue here require that Piladakis pay the purchase price for Mavrakis' shares of stock in a series of installment payments due over a period of 20 months. Piladakis asserts that he could perform his obligation under the agreement within one year by paying the purchase price ahead of schedule and that, as such, the agreement does not fall within the scope of section 1 of the Frauds Act. In support of his contention in this regard, he relies upon *Hartbarger v. SCA Services, Inc.*, 200 Ill. App. 3d 1000, 558 N.E.2d 596 (1990)(court held that an oral contract which called for installment payments over a period of several years could be performed in one year through early payment of the installments). In arguing that the settlement agreement here is not, in fact, capable of

being performed within one year, Mavrakis relies on *Silvestros v. Silvestros*, 206 Ill. App. 3d 84, 563 N.E.2d 1084 (1990) (court held that an oral contract which called for 25 monthly installment payments was not capable of being performed within one year). We find our supreme court's decision in *Tiernan v. Granger*, 65 Ill. 351 (1872), to be dispositive of this issue. In *Tiernan*, the court held that a contract which provided for the purchase price of goods to be paid in installments over a period of 14 months was within the statute of frauds as it was not to be performed within one year of its making. *Tiernan*, 65 Ill. at 354. Accordingly, we reject Piladakis' assertion that the settlement agreement falls outside the scope of section 1 of the Frauds Act because it is capable of performance within one year.

We must, however, determine whether the settlement agreement at issue here, which is not capable of being performed within one year of its making, nonetheless falls outside of the scope of section 1 of the Frauds Act because it was the product of court-supervised settlement negotiations. In support of his contention that such is the case, Piladakis relies upon *Szymkowski v. Szymkowski*, 104 Ill. App. 3d 630, 432 N.E.2d 1209 (1982), and *Kalman v. Bertacchi*, 57 Ill. App. 3d 542, 373 N.E.2d 550 (1978), in each of which cases this court held that an oral settlement agreement involving the sale of real estate was not rendered unenforceable under the statute of frauds provision requiring that such contracts be in writing. Both *Szymkowski* and *Kalman*, however, are factually distinguishable from the instant case.

In contrast to the situation here, in *Szymkowski*, the parties informed the trial judge that they had reached a settlement agreement and set forth the terms thereof in open court. Further, the court found that, once the parties presented their agreement to the court for its approval, any subsequent sale of real estate was pursuant to court order and, thus, fell within an exception to the statutory requirement that contracts for the sale of land be in writing. *Szymkowski*, 104 Ill. App. 3d at 633-34. The statutory exception which the *Szymkowski* court invoked does not apply with regard to the requirement that contracts not capable of performance within one year of their making be in writing. Accordingly, we find Piladakis' reliance on *Szymkowski* to be misplaced.

In *Kalman*, the parties had stated their agreement in open court and it had been transcribed by a court reporter. In concluding that the statute of frauds did not apply to the settlement agreement, the *Kalman* court reasoned that the transcription of the parties' in-court agreement served the same purpose as a signed writing evidencing the agreement. *Kalman*, 57 Ill. App. 3d at 549. We have no quarrel with the proposition of law set forth in *Kalman*, namely, that the Frauds

Act will not bar enforcement of an oral settlement agreement the terms of which were stated by the parties in open court and transcribed by a court reporter. The facts in the instant case, however, are clearly distinguishable from those in *Kalman* in that the parties here stated the terms of their agreement in the trial judge's chambers rather than in open court and no transcript memorializing the agreement was prepared. This is a significant distinction as the *Kalman* court appears to have based its holding that the statute of frauds did not bar enforcement of the settlement agreement at issue in that case upon the fact that a written document, in the form of a transcript, evidencing the agreement existed.

The question with which we are faced is whether a settlement agreement reached during a court-ordered settlement conference conducted in the trial judge's chambers, the terms of which are stated in the judge's presence but neither stated in open court nor transcribed, is exempted from the writing requirement of the Frauds Act where that requirement would otherwise be applicable. The issue is one of first impression in Illinois. Our own research has revealed conflicting authority outside of Illinois.

Although not directly on point, *In re Dolgin Eldert Corp.*, 31 N.Y.2d 1, 286 N.E.2d 228 (1972), provides some analysis of the distinction between settlement agreements reached in open court and those reached during a conference in the trial judge's chambers. In that case, the parties reached a settlement agreement during an "informal conference" conducted in the trial judge's chambers in the presence of the judge and his court clerk. On appeal, the defendants argued that the settlement agreement was unenforceable because it did not comply with a New York statute requiring that stipulations of settlement of litigation be in writing unless made "in open court." The New York Court of Appeals also *sua sponte* raised and addressed the issue of whether the agreement, which involved the distribution of real estate, was unenforceable under the state's statute of frauds, noting that the statute of frauds would not be applicable if the agreement had been reached in open court. *In re Dolgin Eldert Corp.*, 31 N.Y.2d at 8-9, 286 N.E.2d at 232-33. The court determined that the "open court exception" to the statute requiring that settlement agreements be in writing "does not extend to a conference in a Judge's chambers, even in these days of judicial intervention in settlement negotiations." *In re Dolgin Eldert Corp.*, 31 N.Y.2d at 9-10, 286 N.E.2d at 233. It reasoned that proceedings which take place in open court are "manifestly disparate" from informal conferences conducted in a trial judge's chambers in the judge's presence, the former being marked by a formality and solemnity that the latter lacks. It further observed that

there is some memorialization of events which take place in open court, typically in the form of a transcript. *In re Dolgin Eldert Corp.*, 31 N.Y.2d at 10, 286 N.E.2d at 233. The court concluded that, as such, only settlement agreements stated in open court fall outside the statutory requirement that settlement agreements be in writing to be enforceable. Without any further explanation, the court also concluded that the settlement agreement at issue was unenforceable because it violated the statute of frauds. *In re Dolgin Eldert Corp.*, 31 N.Y.2d at 11, 286 N.E.2d at 233-34.

We agree with the *In re Dolgin Eldert Corp.* court that differences exist between proceedings conducted in open court and transcribed by a court reporter and settlement conferences conducted in a trial judge's chambers. We cannot, however, conclude that the lack of formality and lack of a written report of proceedings associated with in-chambers settlement conferences necessarily compels a conclusion that an oral settlement agreement reached in the presence of a trial judge during a settlement conference is subject to the provisions of the Frauds Act. We find *Kohn v. Jaymar-Ruby, Inc.*, 23 Cal. App. 4th 1530, 28 Cal. Rptr. 2d 780 (1994), to be instructive on the issue.

In *Kohn*, as here, the parties participated in a court-mandated settlement conference which was apparently not transcribed. The court's minutes from the date of the conference state that the parties reached a settlement and that the trial date was vacated. Subsequently, when the defendant refused to perform under the settlement agreement, the trial court, upon the plaintiff's motion, entered a judgment conforming to the terms of the settlement agreement. *Kohn*, 23 Cal. App. 4th at 1532, 28 Cal. Rptr. 2d at 781. On appeal, the defendant argued, *inter alia*, that the oral agreement reached at the settlement conference violated California's statute of frauds in that it could not be fully performed within one year. The first district of the California Court of Appeals rejected this argument, concluding that the statute of frauds does not apply to "an oral settlement agreement stipulated to by the parties before the court following a judicially mandated and supervised settlement conference." *Kohn*, 23 Cal. App. 4th at 1534, 28 Cal. Rptr. 2d at 782. The court reasoned:

> "[T]he concern addressed by the statute of frauds is not present when, as here, a neutral court participates in the settlement process by assisting the parties to formulate the terms of the settlement. In so doing, the court assures itself that the parties are being truthful and acting in good faith, and also that they each comprehend the scope of the agreement." *Kohn*, 23 Cal. App. 4th at 1535, 28 Cal. Rptr. 2d at 782.

We find the reasoning of the *Kohn* court to be sound. The

purpose of the writing requirement of the Frauds Act is not to enable parties " 'to repudiate contracts that they have in fact made; it is only to prevent the fraudulent enforcement of asserted contracts that were in fact not made.' " *Haas v. Cravatta*, 71 Ill. App. 3d 325, 328-29 (1979), quoting A. Corbin, Contracts §§ 317 through 320, at 393 (1952). When parties reach a settlement agreement during a court-mandated settlement conference conducted in the judge's chambers and state the terms of that agreement in the judge's presence, there is no danger of enforcement of a contract which was, in fact, never made. This is so even if no transcript or written order memorializing the agreement is prepared on the date the agreement is reached. The possibility of fraud is negated in that the trial judge can, as here, resolve any disputes as to whether an agreement was in fact reached or the content of that agreement. That being said, we suggest that, in the future, when parties to an action reach a settlement agreement in its presence, the trial court would do well to, at a minimum, enter a written order on that date stating that the parties have reached such an agreement and have acknowledged the terms thereof in the court's presence. Such a practice might discourage parties from later asserting that no settlement agreement has been reached.

For the foregoing reasons, we conclude that the oral settlement agreement reached by the parties on December 24, 2002, constitutes a contract and that it falls outside the scope of section 1 of the Frauds Act. Accordingly, we affirm the circuit court's March 12, 2003, order requiring the parties to comply with the terms of the settlement agreement reached on December 24, 2002.

Affirmed and remanded.

SOUTH and KARNEZIS, JJ., concur.