# Illinois Official Reports

## Appellate Court

---

*Board of Trustees of the Harvey Police Pension Fund v. City of Harvey*,
**2017 IL App (1st) 153095**

---

Appellate Court
Caption

BOARD OF TRUSTEES OF THE HARVEY POLICE PENSION
FUND, Plaintiff-Appellee, v. CITY OF HARVEY, an Illinois
Municipal Corporation, Defendant-Appellant.

District & No.

First District, First Division
Docket No. 1-15-3095

Opinion filed            January 23, 2017
Rehearing denied         April 5, 2017
Modified upon denial
of rehearing             April 10, 2017

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 06-CH-15468; the
Hon. Kathleen M. Pantle, Judge, presiding.

Judgment                 Affirmed.

Counsel on
Appeal

Roth Fioretti, LLC, of Chicago (Mark D. Roth, of counsel), for
appellant.

Moirano Gorman Kenny, LLC, of Chicago (Michael H. Moirano and
Claire Gorman Kenny, of counsel), for appellee.

Panel      JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Connors[*] and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1   The City of Harvey appeals from a circuit court order enforcing the terms of a settlement agreement entered into between the City of Harvey and the Board of Trustees of the Harvey Police Pension Fund. In 2006, the Board of Trustees of the Harvey Police Pension Fund filed suit against the City of Harvey for various violations of the Illinois Pension Code. In February 2008, the parties entered into a settlement agreement by which the City of Harvey agreed to pay the Harvey Police Pension Fund $551,079.83 in back property taxes the City of Harvey had collected but failed to remit. The City of Harvey also agreed, commencing with the 2006-07 fiscal year, to annually levy a tax upon all taxable property as required in section 3-125 of the Illinois Pension Code. The parties agreed that the circuit court would retain jurisdiction to enforce the agreement until the back property taxes were repaid.

¶ 2   In December 2010, the Harvey Police Pension Fund filed a motion to compel enforcement of the settlement agreement. It alleged that the City of Harvey was failing to honor its obligations under the settlement agreement. The City of Harvey admitted it had outstanding obligations under the settlement agreement but disputed the amount being claimed by the Harvey Police Pension Fund. The City of Harvey filed a motion for summary judgment, alleging that the circuit court could enforce only the provision dealing with back property taxes and not the provision concerning the collection of taxes beginning with the 2006-07 fiscal year. The circuit court rejected this argument and found it could enforce the entire agreement. The court also found the City of Harvey had failed to collect taxes beginning in 2006 but found there was a dispute as to the amount which should have been collected.

¶ 3   The parties agreed to hire the actuarial firm of Foster & Foster to determine the amount of property taxes the City of Harvey should have collected and remitted beginning in 2006. The report was filed with the circuit court and showed what the City of Harvey should have levied commencing in the 2006-07 fiscal year through the 2013-14 fiscal year. Thereafter, the City of Harvey moved for summary judgment, arguing that it owed the Harvey Police Pension Fund only the amount listed for the 2013-14 fiscal year and not the previous years. The circuit court rejected this argument and entered judgment for the Pension Fund in the amount of $7,334,181.88. After additional briefing, the circuit court also awarded the Harvey Police Pension Fund attorney fees. This timely appeal followed.

¶ 4   On appeal, the City of Harvey challenges the circuit court's authority to enforce the back property tax provision, which resulted in the majority of the money damages entered against it. It also challenges how the circuit court calculated those damages. Finally, it challenges the award of attorney fees in favor of the Harvey Police Pension Fund. For the reasons set forth more fully below, we reject the City's arguments and affirm the judgment of the circuit court

[*]Justice Mikva, who was initially assigned to this case, has recused herself from any further participation in or consideration of the case. Presiding Justice Connors has been assigned as the third panel member.

entered in favor of the Board of Trustees of the Harvey Police Pension Fund.

¶ 5                               JURISDICTION

¶ 6         On September 29, 2015, the circuit court entered a final judgment in favor of the Board of Trustees of the Harvey Police Pension Fund and against the City of Harvey in the amount of $7,334,181.88, plus $45,568.75 in attorney fees. On October 28, 2015, the City filed its notice of appeal. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 301 and 303. Ill. Const. 1970, art. VI, § 6; R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. May 30, 2008).

¶ 7                               BACKGROUND

¶ 8         This action stems from a settlement agreement entered into by plaintiff-appellee, Board of Trustees of the Harvey Police Pension Fund (hereinafter "the Pension Fund") and defendant-appellant, the City of Harvey (hereinafter "the City"). On August 2, 2006, the Pension Fund filed a complaint against the City, seeking a declaratory judgment that the City failed to levy a tax pursuant to section 3-125 of the Illinois Pension Code (40 ILCS 5/3-125 (West 2014)). On February 2, 2008, the parties entered into a settlement agreement (hereinafter "the Settlement Agreement"), and on February 19, 2008, the case was dismissed.

¶ 9         Under the terms of the Settlement Agreement, the City agreed to pay the Pension Fund the sum of $551,079.83 as payment for property taxes levied and received by the City and not remitted to the Pension Fund. The City also agreed to pay $6404.21 in attorney fees. The Settlement Agreement required the City to pay the Pension Fund $50,000 per month until the sum of $551,079.83 was repaid. Additionally, pursuant to the Settlement Agreement, the City agreed that beginning in the fiscal year 2006-07, "the City shall annually levy a tax upon all taxable property of the City, as required in Section 3-125 of the Illinois Pension Code." Finally, the parties agreed that the circuit court would retain jurisdiction over the action for the purpose of enforcing the agreement "only until the City has re-paid the Pension Fund the sum owed to it under section A(1) of this agreement, including the attorney's fees provided herein."

¶ 10        On December 6, 2010, the Pension Fund filed a motion to compel enforcement of the Settlement Agreement, alleging that the City had failed and refused to perform its obligations under it. The motion to compel alleged that the City failed to remit approximately $494,005.84 to the Pension Fund. On May 24, 2011, the City filed its response to the motion to compel, admitting it owed money to the Pension Fund but denying it was the amount stated in the motion. On May 31, 2011, the circuit court granted the Pension Fund's motion to compel and ordered an accounting in order to determine the exact amount owed by the City to the Pension Fund.

¶ 11        Thereafter, both parties moved for cross-summary judgment on the amount owed to the Pension Fund. In moving for summary judgment, the City asserted, pursuant to the 2008 Settlement Agreement, the circuit court only had the authority to order the City to pay the outstanding balance owed pursuant to section A(1) of the Settlement Agreement. Based on this argument, the City asserted it owed only $227,812.23. The Pension Fund disagreed and asserted in its motion for summary judgment that the City owed it money under both A(1) and A(8) of the Settlement Agreement. The Pension Fund claimed it was entitled to $1,312,750.84. The circuit court agreed with the Pension Fund that the City was liable under both A(1) and A(8) of the Settlement Agreement and entered judgment in the Pension Fund's favor on this

issue. However, the circuit court concluded there was a genuine issue of material fact as to the damages owed under those sections, and reserved ruling on the damages issue.

¶ 12 On June 10, 2014, the parties appeared before the circuit court and jointly agreed to hire the actuary firm of Foster & Forster to determine the amount owed by the City. Jason Franken of Foster & Forster performed the required actuarial calculations and issued his report (hereinafter "the Franken Report") on December 2, 2014. The Franken Report included a detailed actuarial calculation of the tax levies the City should have made for each fiscal year from May 1, 2006 through April 30, 2014, as required under section A(8) of the Settlement Agreement. The Franken Report stated that it was compiled using the calculations prescribed in the Illinois Pension Code. The report also included the change in the Pension Code that became effective for the May 1, 2011 fiscal year.

¶ 13 Following the issuance of the Franken Report, the City again moved for summary judgment. In its summary judgment motion, the City argued that, pursuant to section 3-125 of the Illinois Pension Code, the current year's annual actuarial valuation included all amounts due to the Pension Fund. According to this argument, the City would owe only the amount listed in the Franken Report for the 2013-14 year. In its response, the Pension Fund attached a letter from Jason Franken explaining that each fiscal year levy detailed in the Franken Report reflected the amount the City should have collected for that year and the calculations for each successive levy were not cumulative or inclusive of the amount which should have been collected in the previous year. In its reply brief, the City did not challenge the levy calculation but argued that under the plain meaning of section 3-125 "the most recent actuarial valuation comprises the City's total financial obligation to the Pension Board because the valuation takes into account past liabilities and underfunding." 40 ILCS 5/3-125 (West 2014).

¶ 14 After hearing oral arguments from each side, the circuit court issued an order on April 3, 2015, which found that the Pension Fund was entitled to the remaining balance owed under section A(1) of the Settlement Agreement and prior years' levies detailed in the Franken Report. Thus, the circuit court entered judgment in the amount of $7,334,181.88 in favor of the Pension Fund. The parties then briefed the issue of attorney fees, and in an order dated August 31, 2015, the circuit court found, pursuant to the Settlement Agreement, that the Pension Fund was entitled to $38,636.25 in attorney fees. The City moved to reconsider the April 3 order, but the motion was denied on September 29, 2015. This timely appealed followed.

¶ 15 ANALYSIS

¶ 16 The City raises three issues on appeal: (1) whether the circuit court had the jurisdiction to enter a damages award beyond the breach of section A(1) of the Settlement Agreement, (2) whether the circuit court erred in granting the Pension Fund damages pursuant to section A(8) of the Settlement Agreement, and (3) whether the circuit court erred in awarding attorney fees to the Pension Fund.

¶ 17 On the first issue the City raises before this court, it argues that, pursuant to the Settlement Agreement, the circuit court only has jurisdiction to enforce section A(1). Before the circuit court, the City argued that the court only had jurisdiction to enforce section A(1) (and not A(8)) based on the jurisdictional language found in section B(5) of the Settlement Agreement. The circuit court rejected this argument and found it could enforce the entire Settlement Agreement, including section A(8). Whether or not a circuit court has subject-matter jurisdiction is an issue this court reviews *de novo*. *In re Estate of Ahern*, 359 Ill. App. 3d 805,

809 (2005). Subject-matter jurisdiction refers to the court's power both to adjudicate the general issues involved and to grant the particular relief requested. *In re Estate of Gebis*, 186 Ill. 2d 188, 192 (1999). If the court acts to resolve questions or provide relief beyond its jurisdiction, its orders are void. *Ahern*, 359 Ill. App. 3d at 809.

¶ 18    After 30 days have elapsed from the entry of a final judgment, a trial court lacks jurisdiction to amend or modify the judgment. *Director of Insurance v. A&A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 722 (2008). However, an Illinois trial court possesses the power to retain jurisdiction to enforce a settlement agreement. *Id.* at 723. The intent of the trial court to retain jurisdiction may be found in an express statement of retained jurisdiction. *Id.* at 725. An agreement to settle litigation is considered a contract, and general contract rules will apply. *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1090 (2003). "It is well settled that when parties agree to and insert language into a contract, the presumption is that it was done purposefully and the language employed is to be given effect." *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 215 (2007).

¶ 19    In this case, both the Settlement Agreement and the order of dismissal entered on February 19, 2008, expressly stated that the circuit court retained jurisdiction to enforce the Settlement Agreement. Section B(5) of the Settlement Agreement provides: "The parties agree that the Circuit Court of Cook County, Chancery Division, shall retain jurisdiction over this action for the purposes of enforcing the terms of this Agreement only until the City has re-paid the Pension Fund the sum owed to it under section A(1) of this agreement, including the attorney's fees provided therein." Additionally, the February 2008 order dismissing the case pursuant to the Settlement Agreement provides: "The parties request that the Court retain jurisdiction of this case for the sole purpose of enforcing the terms of the settlement agreement."

¶ 20    Based on the Settlement Agreement language and the February 2008 order, the circuit court did not err when it determined it had the jurisdiction to enforce the Settlement Agreement. The Settlement Agreement states that the parties agree that the circuit court should retain jurisdiction "to enforce the terms of the Agreement until the City has re-paid the Pension Fund the sum owed to it under section A(1) of this agreement, including the attorney's fees provided therein." Based on the language agreed to by the Pension Fund and the City, the circuit court's jurisdiction would terminate only when both the sum under section A(1) and the attorney fees were paid. The City admitted both to the circuit court and this court that when the Pension Fund filed its motion to compel, the entire amount due under A(1) had not been paid. Accordingly, the condition divesting the circuit court of jurisdiction had not occurred, and the circuit court had jurisdiction to hear the Pension Fund's motion to compel enforcement of the Settlement Agreement.

¶ 21    The Settlement Agreement contains no language limiting the enforcement authority of the court to only certain sections. The February 2008 dismissal order specifically incorporates the parties' Settlement Agreement for the "purpose of enforcing the terms of the settlement agreement." The order does not contain language limiting the circuit court's authority to enforce only certain provisions. The language in both the Settlement Agreement and the February 2008 order expressly grants the circuit court the authority to enforce "the Agreement" and the "terms of the Settlement Agreement." Accordingly, the City's argument that somehow the language in the Settlement Agreement limited the circuit court's authority to only enforcing section A(1) and not A(8) has no merit.

¶ 22    The City next argues that the circuit court erred in ordering it to pay $7,033,648, which the circuit court found to be the combined sum of the yearly taxes the City should have levied to meet its obligations under section A(8) of the Settlement Agreement. On appeal, the City argues that the circuit court erred in awarding this amount because such an award is contrary to its obligation under section 3-125. In response, the Pension Fund asserts that circuit court's order is correct in its findings regarding the amount owed because the City's obligation was controlled by the Settlement Agreement and not section 3-125.

¶ 23    Based on our review of the record, we conclude that the City's argument lacks merit and the circuit court did not commit any error in awarding the Pension Fund $7,033,648 in damages. "Settlement agreements are encouraged and should be given their full force and effect." *M.H. Detrick Co. v. Century Indemnity Co.*, 299 Ill. App. 3d 620, 624 (1998). "[A] settlement agreement is a contract, and the construction and enforcement of settlement agreements are governed by principles of contract law. [Citation.] The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract, unless the contract is ambiguous." (Internal quotation marks omitted.) *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 18. The Settlement Agreement entered into between the Pension Fund and City provided at paragraph A(3):

> "The City agrees that in the future, any property taxes or personal property replacement taxes levied and received by the City on behalf of the Harvey Police Pension Fund which are assessed, collected and remitted to the City by the Cook County Treasurer's, Collector's office, and/or the Illinois Department of Revenue shall be paid to the Pension Fund, within thirty (30) days of the receipt by the City."

Paragraph A(8) provided:

> "Commencing with fiscal year 2006/2007, and continuing thereafter, the City shall annually levy a tax upon all taxable property of the City, as required in § 5/3-125 of the Illinois Pension Code. The amount of tax levy shall be determined by an enrolled actuary employed by the Illinois Department of Insurance or by an enrolled actuary retained by the Pension Fund. The City agrees to accept the actuarial evaluation for the purpose of the annual tax levy completed by either the enrolled actuary employed by the Department of Insurance or the enrolled actuary retained by the Pension Fund."

When read it conjunction with each other, it is clear that paragraph A(8) required the City to levy a tax each fiscal year beginning with the 2006-07 fiscal year and paragraph A(3) required the City to pay that tax money to the Pension Fund within 30 days. The City's argument that "paragraph A-8 did not require the City to pay the pension Fund the amount of the levy" is therefore contrary to the plain language of the Settlement Agreement. Equally important, the City agreed to accept the actuarial evaluation of either an actuary employed by the Illinois Department of Insurance or by an enrolled actuary retained by the Pension Fund for the purpose of calculating the annual tax levy. Based on this settlement language, regardless of how section 3-125 would normally require a municipal entity to calculate its obligation, the City agreed to make a levy each year beginning with the 2006-07 fiscal year, that such levy would be determined by either an enrolled actuary employed by the Illinois Department of Insurance or by an enrolled actuary retained by the Pension Fund, and those funds would be forward to the Pension Fund within 30 days of the City receiving them.

¶ 24    In an order dated June 10, 2014, the parties agreed to hire Foster & Foster to "determine the amount owed by the defendant to the Harvey Police Pension Fund." Eventually, Jason

Franken, an actuary of Foster & Foster, produced what the parties refer to as the "Franken Report." After receiving this report, the Pension Fund supplied the circuit court with an affidavit from Jason Franken, which explained that he calculated the tax levy that should have been levied, assessed, and collected by the City for each fiscal year between the 2006-07 tax levy year and the 2013-14 tax levy year. He further stated that the expected City contribution for each successive year was not cumulative or inclusive of the prior year's amount. Because the amounts were not cumulative, the City's damages to the Board were based on adding up each missed year. The City did not file any type of counter-affidavit or seek to depose Franken. In fact, at a hearing on the summary judgment motions, the defendant's attorney stated "we agreed that we would be bound by those calculations."

¶ 25    Based on the language in the Settlement Agreement, the Franken Report, and the Franken affidavit, we conclude that the circuit court did not err in entering summary judgment for the Pension Fund. While section 3-125 may normally provide the method for a municipality to calculate its pension obligation, by entering into the Settlement Agreement, the City agreed to calculate its obligation in conformity with paragraphs A(3) and A(8). In entering judgment against the City, the circuit court was merely enforcing the City's contractual obligations under the Settlement Agreement.

¶ 26    Finally, the City argues that the circuit court erred in awarding the Pension Fund attorney fees because it exceeded its jurisdictional authority under the terms of the Settlement Agreement. As discussed above, the circuit court did not exceed its jurisdictional authority in enforcing the Settlement Agreement. Accordingly, we reject this argument and affirm the award of attorney fees in favor of the Pension Fund.

¶ 27                                CONCLUSION

¶ 28    Based on the above, we affirm the circuit court's entry of judgment in favor of the Board of Trustees of the Harvey Police Pension Fund.

¶ 29    Affirmed.