2025 IL App (1st) 232160-U

No. 1-23-2160

Order filed January 17, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| GHERASIM (A/K/A SAM) AND LIDIA STOIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 3834 |
| | ) | |
| CORNELIA AND DANIEL CUSNIRIUC, | ) | Honorable Thomas More Donnelly, |
| | ) | Judge, Presiding. |
| Defendants-Appellants. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court properly granted plaintiffs' motion to enforce the settlement
agreement; affirmed.

¶ 2        Defendants, Cornelia and Daniel Cusniriuc, appeal from the circuit court's order denying their motion to reconsider the court's order granting the motion to enforce the settlement agreement filed by plaintiffs, Gherasim (a/k/a Sam) and Lidia Stoia. Following a pretrial settlement conference with the circuit court, the court entered an order dismissing the case pursuant to settlement. The court subsequently granted plaintiffs' motion to enforce the settlement agreement. On appeal, defendants argue that the circuit court erred when it granted plaintiffs' motion to enforce the settlement agreement because the parties did not have a meeting of the minds as to the

essential terms of the agreement, there were terms and conditions expressly left to future agreement, and a written agreement was a condition precedent to any settlement. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendants and plaintiffs live in a two-unit condominium building in Lincolnwood, Illinois. Plaintiffs own Unit One, which consists of the first floor and the basement, and defendants own Unit Two, which consists of the second floor. The mechanical equipment for defendants' Unit Two, which includes the furnace, hot water heater, and electrical boxes, is located in the basement of plaintiffs' Unit One. This court previously affirmed the circuit court's declaratory judgment finding that defendants, as owners of Unit Two, "had an implied easement by preexisting use to install and access their mechanical equipment in the basement" of plaintiffs' unit. *Cusniriuc v. Stoia*, 2022 IL App (1st) 200495-U, ¶ 2.

¶ 5        In 2022, plaintiffs filed a complaint against defendants, alleging that defendants caused significant damage to their property relating to, among other things, an improperly installed deck over plaintiffs' unit, water leaks in defendants' bathrooms, and improperly installed duct work. Plaintiffs also asserted a claim for contribution to common expenses, alleging that defendants have refused to pay their share of common expenses.

¶ 6        On May 24, 2023, and June 16, 2023, the parties participated in a pretrial settlement conference with the circuit court. On June 16, 2023, the court entered a written order that stated: "This matter is dismissed with prejudice pursuant to settlement with the court to retain jurisdiction to enforce the settlement agreement."

¶ 7              Plaintiffs' Motion to Enforce Settlement Agreement

¶ 8        On August 29, 2023, plaintiffs filed a motion to enforce the settlement, in which it stated that on May 24, 2023, and June 16, 2023, the parties engaged in a pretrial settlement conference with the court that resulted in settlement. Plaintiffs stated that after the June 16, 2023, settlement conference, defendants' counsel indicated he would prepare the first draft, after which plaintiffs' counsel followed up with defendants' counsel several times checking on the status of the draft. Plaintiffs asserted that on July 7, 2023, defendants' counsel emailed plaintiffs' counsel the first draft of the agreement, which "did not include many of the major terms of the agreement as was discussed and agreed to at the settlement conference." Plaintiffs further stated that, on July 31, 2023, plaintiffs' counsel emailed a revised draft to defendants' counsel, "which included all the terms that were agreed to by the parties during the settlement conference." Thereafter, plaintiffs' counsel followed up with defendants' counsel on "numerous occasions to determine the status of the settlement agreement" and then plaintiffs filed the motion to enforce settlement after counsel did not hear from defendants' counsel.

¶ 9        Plaintiffs attached to their motion the email exchanges between the attorneys from June 17, 2023, to July 31, 2023. In defendants' counsel's email on July 7, 2023, counsel attached the initial draft and stated: "[H]ere's the draft Settlement Agreement. I am still tweaking it. However, please review and let me know your thoughts."

¶ 10        In a written order on September 28, 2023, the circuit court granted plaintiffs' motion to enforce the settlement agreement and ordered the parties "to have a fully executed agreement within 7 days." The record does not contain a transcript of any proceedings that took place on September 28, 2023.

¶ 11                        Defendants' Motion to Reconsider

¶ 12        Defendants filed a motion to reconsider the court's order granting plaintiffs' motion to enforce the settlement agreement in which they provided a summary of their version of the May 24, 2023, and June 16, 2023, pretrial settlement conferences and attached an affidavit in support of their summary. According to defendants, the May 24, 2023, pretrial conference was dedicated to plaintiffs' monetary demands, with plaintiffs initially demanding $1.2 million and then reducing it to $275,000, and defendants offering $75,000. Defendants stated that plaintiffs demanded that defendants' mechanical equipment be relocated from the basement to the attic, and defendants proposed the idea of creating a separate mechanical room for their equipment in the corner of the basement. According to defendants, plaintiffs insisted that it would cost between $20,000 to $30,000 to relocate the equipment to the attic, and defendants insisted that it would cost more than $75,000.

¶ 13        Further, according to defendants, during the June 16, 2023, pretrial settlement conference, plaintiffs reduced their monetary demand, and defendants increased their offer to $100,000, "which would have been paid by their insurer." Defendants asserted that "[t]o [their] understanding, the $100,000 payment was contingent on [plaintiffs] executing a comprehensive release of all claims addressing any and all issues they raised in this matter, as well as confidentiality and non-disparagement clauses." As for the relocation of defendants' mechanical equipment to the attic, defendants stated that they "again specifically advised the Court and [plaintiffs] that such project would be very involved and very costly" and that the court and plaintiffs insisted that it would cost no more than $30,000. Defendants stated that plaintiffs "were persuaded to accept to split equally the entire cost of the attic relocation" and that "[b]ased on the Court's advice, [defendants] agreed to consider this." Defendants stated that the June 16, 2023, conference "ended abruptly while the parties were still negotiating" when the court's clerk walked

in with the court's draft order dismissing the matter pursuant to settlement. According to defendants, this surprised the parties and their counsels "as at that time there was still no clear meeting of the minds regarding the non-monetary terms of a possible settlement."

¶ 14    Defendants further stated that on July 7, 2023, they sent plaintiffs a proposed settlement agreement "containing the terms which were discussed and negotiated including a comprehensive release of all claims, covenant not to sue, confidentiality and non-disparagement clauses, roof repair and insurance acquisition clauses." On July 31, 2023, plaintiffs responded "with a heavily modified version of the proposed agreement."

¶ 15    Defendants also stated that sometime between July 7, 2023, and July 31, 2023, plaintiffs had two contractors provide estimates for the attic relocation project, which were never communicated to defendants, and on September 26, 2023, one of the contractor's advised defendants that the attic relocation was "much more costly and intrusive as initially represented by [plaintiffs]" and that "any relocation work could *never* ensure the units' independence from each other due to the very peculiar layout of the building."

¶ 16    In defendants' motion to reconsider, they argued that the parties did not have a meeting of the minds to an essential term of the agreement because they "never agreed to the high cost of the attic relocation." Defendants asserted that "[w]hile [plaintiffs] did commit to accepting $100,000 and to release their claims, [defendants] clearly expressed their intent to settle under representations that the attic relocation costs would not exceed $30,000" and the "alleged oral settlement agreement was expressly conditioned on the $30,000 purposed costs representation, as they would not have been unable [*sic*] to afford more."

¶ 17    Defendants stated that on June 16, 2023, "the only clear understanding that was reached regarding settlement was the $100,000 payment to [plaintiffs] in exchange to a release" but "that

was contingent on [plaintiffs] comprehensive release of all liabilities" related to plaintiffs' allegations. Defendants also asserted that non-disparagement, confidentiality, and covenant not to sue clauses were essential terms that they insisted on. Defendants argued that because there were terms and conditions left to future agreement, there was no enforceable contract on June 16, 2023. Defendants further argued that a written agreement was a condition precedent to any settlement. They also asserted that on July 31, 2023, when plaintiffs responded to defendants with a revised draft of the agreement, plaintiffs rejected defendants' terms and counteroffered other terms such that there was no contract.

¶ 18　　　Defendants attached to their motion the initial draft that their counsel sent to plaintiffs' counsel on July 7, 2023. This draft provided, among other things, that the parties would engage in the work of relocating defendants' mechanical equipment to the building's attic and that "[a]ll the costs (including labor and materials) related to said relocation will be shared equally by the parties."

¶ 19　　　Defendants also attached the draft agreement revised by plaintiffs' counsel on July 31, 2023. In this revised draft, plaintiffs' counsel deleted the provisions from defendants' counsel's initial draft that contained the headers, "Confidentiality," "No Pending or Future Actions/Covenant Not To sue," and "Non-Disparagement." Plaintiffs' draft also revised the provision entitled "General Release and Discharge" related to defendants' release to state as follows: "As a material inducement for [defendants] to enter into this Agreement and for their insurance to make the payment referenced above, [plaintiffs] *** forever release [defendants] *** of and from any and all claims that were alleged in this action only and only after [plaintiffs] receive the $100,000 Settlement Payment from [defendants'] Insurance Company."

¶ 20　　　Hearing on Defendants' Motion to Reconsider and the Circuit Court's Ruling

¶ 21    After a hearing on defendants' motion to reconsider, the circuit court denied defendants' motion, and on October 19, 2023, the court issued a written order denying defendants' motion. In the written order, the court stated that plaintiffs and defendants attended two pretrial conferences on May 24, 2023, and June 16, 2023, and at the second pretrial conference, "the court witnessed the parties' agreement on the settlement terms." The court further stated that defendants did not present "evidence rebutting what the court witnessed on June 16, 2023" and that the "second pretrial conference resulted in a meeting of the minds on the material terms of the settlement agreement." The court further stated that "the parties reached an agreement with definite and certain terms," and "[b]ecause an enforceable agreement was definite and certain, [defendants'] additional arguments that terms were conditional, rejected, or required additional pleadings also fails."

¶ 22    On November 16, 2023, defendants filed a notice of appeal requesting review of the court's order denying their motion to reconsider. This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24    Defendants contend that the circuit court erred when it denied their motion to reconsider and held that there was a valid and enforceable settlement agreement between the parties. Defendants argue that there was no meeting of the minds as to the essential terms of the purported settlement, asserting that they "never agreed to the high cost of the attic relocation." They argue that their $100,000 payment "was contingent on [plaintiffs'] comprehensive release of all liabilities related to the allegations set forth by [plaintiffs]" and that non-disparagement, confidentiality, and covenant not to sue clauses were essential terms that they insisted on.

¶ 25    Initially, we note that defendants argue that the circuit court did not have jurisdiction to enforce the terms of the settlement because there was no justiciable issue raised. Generally, "a

trial court loses its jurisdiction over a case 30 days after it enters the final judgment in that case, unless there is a filing within that 30 days that extends jurisdiction." *Village of Bloomingdale v. Lake/Ridge, LLC*, 2021 IL App (2d) 200232, ¶ 13. However, a trial court "possesses the power to retain jurisdiction to enforce a settlement agreement." *Board of Trustees of Harvey Police Pension Fund v. City of Harvey*, 2017 IL App (1st) 153095, ¶ 18. Further, "[a]s there exists a strong policy in favor of settlement and the resulting avoidance of costly and time-consuming litigation, courts retain inherent power to enforce settlement agreements reached in litigation pending before them." *Security Pacific Financial Services v. Jefferson*, 259 Ill. App. 3d 914, 919 (1994). A trial court's intent "to retain jurisdiction may be found in an express statement of retained jurisdiction." *Board of Trustees of Harvey Police Pension Fund*, 2017 IL App (1st) 153095, ¶ 18.

¶ 26    Here, the court's June 16, 2023, dismissal order specifically stated that the court retained jurisdiction, as it stated the case is dismissed "pursuant to settlement with the court to retain jurisdiction to enforce the settlement agreement." The court therefore had jurisdiction to review plaintiffs' motion to enforce the settlement agreement and to enforce the terms of the settlement agreement.

¶ 27    We now turn to defendants' argument that the court erred in finding that the parties entered into a valid and enforceable settlement agreement. When we review "a challenge to a trial court's determination that parties reached an oral settlement agreement," we "will not overturn that finding unless it is against the manifest weight of the evidence." *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 312 (2009). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 28    "A settlement agreement is in the nature of a contract and is governed by principles of

contract law." *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1090 (2003). "Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement." *K4 Enterprises*, 394 Ill. App. 3d at 313. " 'A meeting of the minds between the parties will occur where there has been assent to the same things in the same sense on all essential terms and conditions.' " *In re Marriage of Haller*, 2012 IL App (5th) 110478, ¶ 26 (quoting *Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 896 (2002)). "For a contract to be enforceable, the material terms must be definite and certain." *K4 Enterprises*, 394 Ill. App. 3d at 313. However, when nonessential details are missing, that does not make the contract unenforceable. *Rose*, 343 Ill. App. 3d at 1091.

¶ 29    Defendants argue there was no meeting of the minds, as they "never agreed to the high cost of the attic relocation" and the "only clear understanding that was reached regarding settlement was the $100,000 payment to [plaintiffs] in exchange for a release." They assert, however, that the $100,000 payment "was contingent on [plaintiffs'] comprehensive release of all liabilities related to the allegations set forth by [plaintiffs]." They also assert that they insisted that the agreement contain non-disparagement, confidentiality, and covenant not to sue clauses.

¶ 30    We do not have a transcript or bystander's report of any proceedings that took place on June 16, 2023, when the court dismissed the case pursuant to settlement. We also do not have a transcript or bystander's report of any proceedings that took place on September 28, 2023, when the court granted plaintiffs' motion to enforce the settlement agreement, in which they argued that the revised draft plaintiffs' counsel emailed to defendants' counsel on July 31, 2023, "included all the terms that were agreed to by the parties during the settlement conference." As the appellants, defendants have the burden of presenting "a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that

the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. Here, because defendants did not provide a transcript or a bystander's report of any proceedings that took place on either June 16, 2023, or September 28, 2023, we presume the court's order granting plaintiffs' motion to enforce the settlement agreement was entered in conformity with the law and had a sufficient factual basis.

¶ 31      Further, the court was present during the parties' pretrial settlement conferences and after the June 16, 2023, settlement conference, it entered an order dismissing the case pursuant to a settlement agreement. The court's presence during the parties' settlement conferences was sufficient to ensure that the parties entered an oral settlement agreement. See *K4 Enterprises*, 394 Ill. App. 3d at 309, 316 (where the parties negotiated a settlement agreed with the circuit court in its chambers, the reviewing court stated that although there was no record of the parties settlement negotiations, the court's "presence and his conclusion that the parties reached an agreement is sufficient to ensure that a contract was made"); *Rose*, 343 Ill. App. 3d at 1097 ("When parties reach a settlement agreement during a court-mandated settlement conference conducted in the judge's chambers and state the terms of that agreement in the judge's presence, there is no danger of enforcement of a contract which was, in fact, never made."). Further, the circuit court, who was present during the parties' negotiations, could resolve any disputes as to the terms of the agreement. See *Rose*, 343 Ill. App. 3d at 1097 (the reviewing court stated that where the parties participated in a court-mandated settlement conference in the court's chambers and stated the terms of the agreement in the court's presence, "[t]he possibility of fraud is negated in that the trial judge

can, as here, resolve any disputes as to whether an agreement was in fact reached or the content of that agreement.").

¶ 32    In addition, in the court's written order denying defendants' motion to reconsider, it expressly found that the June 16, 2023, pretrial conference "resulted in a meeting of the minds on the material terms" and "the parties reached an agreement with definite and certain terms." The parties had the opportunity to place the settlement terms on the record on June 16, 2023, when the court dismissed the case pursuant to the settlement, at the September 28, 2023, hearing, when the court granted plaintiffs' motion to enforce the settlement agreement, or at the October 17, 2023, hearing on defendants' motion to reconsider. As previously noted, the court, who was present during the settlement conferences, could resolve any disputes as to the terms of the agreement, and defendants had the opportunity to put the terms on the record. See *id.* Defendants cannot now argue that the trial court's account is inaccurate. See *K4 Enterprises*, 394 Ill. App. 3d at 317-18 (noting that the defendants had opportunities to place the terms of the settlement agreement on the record at the time the trial court dismissed the case and at the hearing on the motion to enforce the settlement agreement so "they cannot now complain that the judge's recollection, which differs from theirs, is inaccurate, as both parties assumed that risk").

¶ 33    Moreover, as for defendants' argument that the oral agreement was contingent on the costs of the attic relocation project, the court expressly rejected this argument. At the hearing on defendants' motion to reconsider, defendants' counsel argued that "there was no meeting of the minds because it was based on the estimated costs of 20 to $30,000," the "cost is much greater," and the "contractor will testify that no work is going to make possible that both units become independent because of the very peculiar nature of the building ***." The court noted that it was a "witness to the meeting of the minds" and it specifically found that "the parties bargained for it"

and "[s]o [t]hey made the deal. They are stuck with the deal." As discussed above, the court, who was present during the negotiations, could resolve any disputes as to the contents of the agreement. The record also supports the court's conclusion. Defendants' counsel's first draft of the agreement sent to plaintiffs' counsel on July 7, 2023, provided that the parties would engage in the work of relocating defendants' mechanicals to the building's attic and that "[a]ll costs (including labor and materials) related to said relocation will be shared equally by the parties." This draft did not provide that this provision or the attic relocation project was contingent on the costs of the project.

¶ 34       Defendants also argue that a written agreement was a condition precedent to any oral settlement. "Where the reduction of an agreement to writing and its formal execution is intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon." *In re Estate of Glassman*, 257 Ill. App. 3d 102, 107 (1993). However, a settlement agreement need not be "reduced to writing to make it valid and binding" (*Haller*, 2012 IL App (5th) 110478, ¶ 30), and "[e]ven where the parties contemplate the execution of a written release or stipulation, this writing need not be a condition precedent to a valid settlement agreement." *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 147 (1997).

¶ 35       Here, there is nothing in the record to show that the parties intended that the oral agreement reached at the pretrial settlement conference was contingent on a formal execution of a written agreement. Rather, in the court's June 16, 2023, order, it dismissed the case pursuant to a settlement and did not indicate that a signed written agreement was a condition precedent to the oral settlement agreement reached that day. The parties did not need to reduce their June 16, 2023, oral settlement agreement to writing for it to be enforceable. See *Haller*, 2012 IL App (5th) 110478, ¶ 30 (stating that the circuit court "directed counsel to draft a written judgment

incorporating the terms of the agreement, but the settlement agreement did not need to be reduced to writing to make it valid and binding").

¶ 36    Defendants also assert that plaintiffs' correspondence on July 31, 2023, in which it responded to defendants' counsel with a revised draft of the agreement, was a rejection of defendants' terms and a counteroffer of other terms. As previously discussed, on June 16, 2023, the court, who was present at the pretrial settlement conference, dismissed the case pursuant to settlement. In the court's order denying defendants' motion to reconsider, it expressly stated that at the June 16, 2023, pretrial conference, the parties' reached an agreement "with definite and certain terms" and there was a "meeting of the minds on the material terms." The record shows that after the parties reached the oral agreement on June 16, 2023, defendants' counsel agreed to prepare the first written draft of the agreement. In counsel's July 7, 2023, email to plaintiffs' counsel with the first draft, he wrote, "here's the draft Settlement Agreement. I am still tweaking it. However, please review and let me know your thoughts." Thereafter, on July 31, 2023, plaintiffs' counsel responded to defendants' counsel with a revised draft of the agreement. From our review, plaintiffs' counsel's email to defendants' counsel with a revised draft on July 31, 2023, does not show that plaintiffs were attempting to cancel or modify the oral agreement reached on June 16, 2023, or engage in further negotiations, but demonstrates that they were attempting to draft an agreement that represented what the parties had agreed to that day during the pretrial settlement conference with the court. See *Copley v. Pekin Insurance Co.*, 111 Ill. 2d 76, 86 (1986) ("Generally, contracts can be cancelled by mutual consent of the parties to the contract."); *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 37 ("parties to an existing contract may, by mutual assent, modify a contract provided that the modification does not violate the law or public policy").

¶ 37    Lastly, defendants contend that, even if the parties had a valid agreement to settle, defendants' performance under the settlement agreement should be excused under the doctrine of frustration of purpose. They assert that the trial court's "assumption regarding the non-monetary terms of the settlement, including but not limited to price, timeline, permitting, and feasibility, is a supervening event that made [their] performance impracticable."

¶ 38    "The doctrine of commercial frustration will render a contract unenforceable if a party's performance under the contract is rendered meaningless due to an unforeseen change in circumstances." *Illinois -American Water Co. v. City of Peoria*, 332 Ill. App. 3d 1098, 1106 (2002). The doctrine is subject to a " 'rigorous two-part test.' " *Mufaddal Real Estate Fund, LLC v. Vara School Professionals, Inc.*, 2024 IL App (3d) 220499, ¶ 32 (quoting *Northern Illinois Gas Co. v. Energy Cooperative, Inc.*, 122 Ill. App. 3d 940, 952 (1984)). Under this test, "[a] party claiming frustration must show that (1) the frustrating event was not reasonably foreseeable and (2) the value of performance by the nonclaiming party has been totally or nearly totally destroyed by the frustrating event." *55 Jackson Acquisition, LLC, v. Roti Restaurants, LLC*, 2022 IL App (1st) 210138, ¶ 56. The doctrine "should not be applied liberally." *American National Bank v. Richoz*, 189 Ill. App. 3d 775, 780 (1989).

¶ 39    Initially, we note that defendants did not raise in the circuit court the argument that their performance is excused under the doctrine of frustration. "[I]ssues not raised in the trial court are waived and may not be considered for the first time on appeal." *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59; *Hytel Group., Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010) ("A reviewing court will not consider arguments not presented to the trial court."). Defendants therefore forfeit their argument that the doctrine of frustration renders the contract unenforceable and excuses their performance.

¶ 40      We note that defendants argued in their motion to reconsider in the circuit court that the cost of the attic relocation project was "seriously underestimated" and had they "had an opportunity to consider this essential factor they would have certainly declined as they cannot afford 50% of such high amount." To the extent that defendants' argument in the circuit court regarding the high costs of the attic relocation project was raised under the doctrine of frustration, we will briefly address it. Defendants assert that during the pretrial settlement conferences, they insisted that the project would cost more than $75,000 and that plaintiffs insisted that the cost would not be more than $30,000. However, as previously noted, the agreement was not contingent on the costs for the project, and under the agreement, the parties agreed to split the costs. Defendants have not demonstrated that a frustrating event regarding the costs of the attic relocation project was not reasonably foreseeable such that the contract is unenforceable or their performance excused.

¶ 41                                   III. CONCLUSION

¶ 42      For the foregoing reasons, we affirm the circuit court's order denying defendants' motion to reconsider the court's order granting plaintiffs' motion to enforce the settlement agreement.

¶ 43      Affirmed.