NOTICE

Decision filed 12/04/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220347-U

NO. 5-22-0347

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ANDREA RENEA RAPP, | ) | Hamilton County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| and | ) | No. 13-D-39 |
| | ) | |
| RAYMOND C. RAPP, | ) | Honorable |
| | ) | Thomas J. Dinn III, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the circuit's judgment granting Andrea's motion to strike and dismiss Raymond's motion to vacate, where the court determined a valid and enforceable agreement existed. We reverse the court's finding that Raymond's nonmarital assets transmuted to marital property.

¶ 2     The instant appeal arises from proceedings related to the supplemental judgment for dissolution of marriage of respondent, Raymond C. Rapp, and petitioner, Andrea Renea Rapp. Raymond argues that the circuit court's findings that a settlement agreement existed between the parties and that Raymond transmuted nonmarital assets to marital property were against the manifest weight of the evidence. In the alternative, if a contract existed, Raymond contends the contract was unconscionable. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

1

¶ 3                                    I. Background

¶ 4       We recite only those facts necessary to our understanding of the case and resolution of this appeal. On August 21, 2013, Andrea filed a petition for dissolution of marriage against Raymond.[1] Andrea alleged that the parties married on February 17, 1996, and shared two children, T.R. (d.o.b. Apr. 8, 2000) and E.R. (d.o.b. Jan. 31, 2006). On August 17, 2015, the parties entered into an agreed order incorporating a joint parenting agreement that required Raymond *inter alia* to pay child support, health insurance, and interim attorney fees to Andrea's attorney. On November 30, 2017, the circuit court entered an agreed order, wherein Raymond agreed to pay Andrea $20,000 as an advance against the marital estate on or before December 8, 2017.

¶ 5       On December 11 and 14, 2017, Andrea filed verified petitions for orders to show cause for indirect civil contempt against Raymond. Specifically, Andrea alleged that Raymond failed to pay child support, health insurance, and attorney fees in violation of the circuit court's August 17, 2015, joint parenting agreement, and also failed to pay Andrea an advance of $20,000 against the marital estate in violation of the court's November 30, 2017, agreed order.

¶ 6       On January 10, 2018, the circuit court entered an indirect civil contempt order against Raymond for failure to comply with the court's August 17, 2015, joint parenting agreement and November 30, 2017, agreed order. In addition, the court entered an order for temporary relief and a temporary restraining order with notice against Raymond. The court required Raymond to seek court approval if and when he sold marital assets or expended funds in excess of $250;[2] provide Andrea with an accounting of all expenses and funds; consult with Andrea on all financial

_____

[1]Andrea originally filed the dissolution of marriage in Jefferson County, Illinois. On October 17, 2013, the Jefferson County circuit court transferred venue to Hamilton County, Illinois, where the parties owned substantial real property.
[2]The circuit court made an exception in the event that Raymond expended funds on routine payments for health insurance premiums and utilities.

decisions regarding the farming operation; add Andrea to financial accounts associated with the farming operation; refinance debts; and determine with Andrea the assets to liquidate to pay all prior court-ordered amounts.

¶ 7    On June 5, 2018, Andrea filed an emergency petition for temporary relief regarding the sale of real estate and farm equipment, requesting that the circuit court order the sale of real estate and related farm equipment. Shortly thereafter on June 20, 2018, the court entered an amended order for temporary relief and a temporary restraining order with notice, placing the same requirements on Raymond as stated in the court's January 10, 2018, order. In the June 20, 2018, order, Judge Thomas Dinn valued Raymond's marital interest in excess of $1,339,870 and nonmarital assets in excess of $1,276,153, as provided in prior stipulations, dated September 27, 2017,[3] and November 2, 2017.[4] Judge Dinn also determined that Andrea had an interest in reimbursement to the marital estate for marital contributions to Raymond's nonmarital assets.

¶ 8    On July 25, 2018, the circuit court entered an order for temporary relief regarding the sale of real estate and farm equipment. After the parties paid off debts, satisfied liens, and sold real estate and farm equipment, Judge Dinn ordered the parties to deposit the sale proceeds in the interest on lawyers' trust account (IOLTA) of Raymond's attorney, Attorney Rebecca Whittington.[5] In addition, Judge Dinn specified that "[a] determination of whether property is

---

[3]On September 27, 2017, the circuit court entered a stipulation, signed and agreed to by the parties, which designated farm equipment as marital or nonmarital assets. Raymond's nonmarital assets totaled $86,675.

[4]On November 2, 2017, the circuit court entered "Stipulation #3," signed and agreed to by the parties, which designated $9727 in nonmarital assets to Raymond. The court also entered "Stipulation #4," signed and agreed to by the parties, which designated $1,179,751 to Raymond as nonmarital assets. This amount included $1,151,000 in real estate and $28,751 for the following items: two machine sheds, three grain bins, and one garden tool shed.

[5]On November 19, 2018, Attorney Bryan Drew filed a motion for substitution of attorney, which the circuit court granted. Attorney Roger White later represented Raymond with Attorney Drew.

marital or non-marital and whether there has been marital contribution to non-marital property will survive the sale and may be raised with respect to disbursement of proceeds as between the parties."

¶ 9 On September 18, 2018, the circuit court entered a temporary order regarding "Child Support[,] Constructive Trust, and Exclusive Possession," wherein Judge Dinn noted that Raymond's misconduct necessitated the court's temporary order. To ensure the availability of funds for child support, health insurance, medical expenses, educational and extracurricular activities, and life insurance premiums, Judge Dinn ordered the imposition of a child support trust (Trust) and constructive trust upon Raymond's nonmarital assets, with Andrea as named trustee. Relevant to this appeal, Judge Dinn also ordered the following:

"F. All personal property including, but not limited to, titled vehicles and farm equipment and any life insurance policies with cash value on [Raymond's] life shall be transferred into [Andrea's] name to be held in trust pending Court ordered auction and further order of the Court.

\*\*\*

H. All proceeds from the sale of the real estate auction and the equipment auction are to be held in trust in [Andrea's] attorney's IOLTA account. Attorney [Nicole] Villani, [Andrea's attorney,] may make distributions for all child support arrearages, statutory interest, past due medical expenses, subsequently occurring child support, health insurance premiums for the parties and children, life insurance premiums on [Raymond's] life and subsequent medical expenses without further order of the Court. A monthly accounting shall be filed with the Court and served on all parties by the 1st of each month following the month in which any funds are placed in Attorney Villani's Trust Account pursuant to this Order.

I. Until such time as the proceeds from the real estate and equipment auction are placed in Attorney Villani's Trust Account, or legal title to said assets placed in [Andrea's] name as trustee, a constructive trust is placed upon [Raymond's] non-marital assets and [Raymond's] portion of marital assets for the support of the children.

4

J. A constructive trust is further imposed for the benefit of [Andrea] to allow the Court to adjudicate [Andrea's] right to an equitable distribution of marital property and an equitable distribution for marital contributions to [Raymond's] non-marital assets. The parties have previously stipulated to the characterization of assets in a Stipulation filed September 27, 2017[,] and in Stipulation #3 and Stipulation #4 filed November 2, 2017. Said Stipulations acknowledge that [Andrea] has an equitable interest in [Raymond's] designated non-marital assets for marital contributions to non-marital assets and the resulting right of reimbursement."

The court further stated: "This Order shall be considered non-prejudicial with regard to the final allocation of assets in this matter."

¶ 10    On January 22, 2020, the circuit court entered a judgment dissolving the parties' marriage. The court reserved jurisdiction to determine all remaining issues.

¶ 11    On June 9, 2021, Judge Dinn held a settlement conference where both parties appeared with counsel.[6] Shortly thereafter, on June 29, 2021, Judge Dinn held a second settlement conference where both parties appeared with counsel. Judge Dinn's docket entry stated: "PARTIES CLOSE TO SETTLEMENT, 6/30/21 AT 1130." (Emphasis in original.)

¶ 12    On June 30, 2021, the parties' attorneys held a settlement conference in Judge Dinn's chambers outside the presence of the parties.[7] Although Judge Dinn's docket entry indicated that the matter was set for a bench trial that day at 11:30 a.m., the parties' attorneys reported that the "PARTIES NEED TO CLEAR PROPOSED SETTLEMENT WITH BANKRUPTCY ATTORNEY ***." (Emphasis in original.)[8] The court set a status hearing for July 21, 2021, at which time the parties' attorneys appeared in-person (Attorneys Villani and White) and by phone (Attorney Drew) before Judge Dinn. The parties exchanged the proposed judgment at this time,

---

[6]Information taken from Raymond's motion to vacate supplemental judgment for dissolution of marriage. There is no docket entry contained in the record on appeal for this date.
[7]Information taken from Raymond's motion to vacate supplemental judgment for dissolution of marriage.
[8]On October 12, 2018, Raymond filed a petition for Chapter 12 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Illinois.

and the court reset the case for a status hearing on July 28, 2021, to provide Raymond time to submit the proposed judgment to his bankruptcy attorney for review.

¶ 13    On July 28, 2021, following a hearing,[9] the circuit court entered a supplemental judgment for dissolution of marriage concerning disposition, division of marital and nonmarital assets, assignment of debts, payment of child support and related expenses, maintenance, and payment of attorney fees and costs, among other issues. Relevant to this appeal, Judge Dinn terminated the Trust and ordered the balance, which contained $818,491.78 as of July 21, 2021, "equally divided" between the parties. Following the division of the remaining balance, Judge Dinn allowed Andrea to receive an immediate distribution of $277,412.89. However, Judge Dinn ordered Raymond to maintain the balance of his marital distribution of $409,245.89 in his separate postjudgment child support trust pending further court order. Judge Dinn further stated:

> "That as of the entry of this Judgment, the temporary Child Support Trust contained funds contributed from the sale of marital and non-marital property which were comingled resulting in a loss of identity of the contributing estates. Said estate commingled property is deemed transmuted to marital property."

¶ 14    Also on July 28, 2021, Judge Dinn's docket entry stated the following:

> "[ANDREA] WITH ATTY VILLANI, [RAYMOND] WITH ATTY WHITE, [RAYMOND] REFUSES TO SIGN SUPPLEMENTAL JUDGMENT FOR DISSOLUTION OF MARRIAGE, COURT NOTES THAT EVERY MODIFICATION MADE INCORPORATED IN THE SUPPLEMENTAL JUDGMENT IS TO THE BENEFIT AND AT THE REQUEST OF [RAYMOND]. THE SUPPLEMENTAL JUDGMENT IN ALL OTHER RESPECTS REFLECTS THE AGREEMENT OF PARTIES STATED TO THE COURT ON 6/30/21 AND 7/21/21.
>
> ATTY VILLANI MAKES ORAL MOTION FOR COURT TO ENFORCE THE AGREEMENT AND THAT GOOD CAUSE HAS BEEN SHOWN, ATTY WHITE OBJECTS ON BEHALF OF [RAYMOND], COURT ENTERS THE SUPPLEMENTAL JUDGMENT OF DISSOLUTION OF MARRIAGE AS AMENDED OVER THE

---

[9]The record on appeal does not contain a transcript of the hearing.

6

OBJECTION OF [RAYMOND], CLERK TO FILE JUDGMENT AND SEAL EXHIBIT B." (Emphasis in original.)

As such, Judge Dinn granted Andrea's motion to enforce the settlement agreement contained in the supplemental judgment for dissolution of marriage.

¶ 15    On August 27, 2021, Raymond filed a motion to vacate the supplemental judgment for dissolution of marriage, arguing that the circuit court entered said order "without the consent and agreement of the [Raymond]." The motion stated that Raymond "presented to his counsel th[e] morning [of July 28, 2021] all amendments he wanted changed in the proposed judgment." The parties' attorneys then met "outside the presence of the court to which [Andrea's] counsel agreed to make two changes." Raymond admitted that he "picked up the pen and initialed the three changes which he had requested" in the judgment.[10] Raymond contended, however, that he refused to "sign off on the rest of the document as he did not agree with it and wanted to have a trial on the remaining issues," which included, among other things, distribution of real property. Raymond asserted that "at no such time was there any written or oral agreement." Raymond requested the court vacate the supplemental judgment and procced to trial on the merits.

¶ 16    On November 30, 2021, Andrea filed a motion to strike and dismiss Raymond's motion to vacate the supplemental judgment for dissolution of marriage, which the circuit court granted on May 4, 2022, following a hearing.[11] Raymond filed a timely notice of appeal. Additional facts will be presented as necessary in our analysis.

---

[10]Raymond agreed to the following three modifications in the supplemental judgment, as evidenced by his initials, including to: (1) allow Andrea to receive an immediate distribution of $277,412.89 of her award of marital assets, while the court required Raymond's "marital distribution of $409,245.89" remain in his separate postjudgment child support trust pending further court order regarding Ray's outstanding child support obligations; (2) allow Andrea to purchase a vehicle for E.R., and (3) allow Andrea to maintain status as Raymond's designated life insurance beneficiary for the benefit of E.R. until the court terminated Raymond's separate child support trust.

[11]The record on appeal does not contain a transcript of the hearing.

7

¶ 17                                    II. Analysis

¶ 18    Raymond argues first on appeal that the circuit court's finding that a valid and enforceable settlement agreement existed between the parties was against the manifest weight of the evidence.[12] Specifically, Raymond maintains that no contract existed between the parties as evidenced by: (1) the court's June 29, 2021, docket entry indicating that the parties reached a proposed, not actual, settlement; (2) the failure of the parties to discuss essential terms of the agreement; and (3) Raymond's clear desire on July 28, 2021, to proceed to trial on the merits. Alternatively, in the event a contract existed, Raymond attacks the conscionability of the contract. Lastly, Raymond contends that the court erred by finding Raymond's nonmarital assets transmuted to marital property. We address Raymond's contentions in turn.

¶ 19    It is well settled that Illinois law favors the amicable settlement of property rights in cases of marital dissolution. *In re Marriage of Lorton*, 203 Ill. App. 3d 823, 825 (1990); *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657, 669 (2001) ("Illinois encourages the settlement of claims and, to that end, settlement agreements may be oral."). A settlement agreement is a contract governed by principles of contract law. *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731 (1995). In order for a valid contract to be formed, its material terms and provisions must enable the court to determine what the parties agreed to do. *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1091 (2003). "Although some terms of a contract may be missing or left to be agreed upon, the parties' failure to agree upon an essential term of a contract indicates that the mutual assent required to make a contract is lacking and, thus, there is no enforceable contract." *Id.* The determination of whether a valid settlement agreement occurred is in the discretion of the circuit court, and the appellate court will not reverse

_____

[12]Raymond initially argues that this issue is reviewed *de novo*. Although Raymond did not file a reply brief, counsel for Raymond clarified during oral argument that the correct standard of review is manifest weight of the evidence.

the judgment unless it is contrary to the manifest weight of the evidence. *In re Marriage of Baecker*, 2012 IL App (3d) 110660, ¶ 25; *In re Marriage of Gibson-Terry*, 325 Ill. App. 3d 317, 322 (2001); *Webster v. Hartman*, 309 Ill. App. 3d 459, 460 (1999). A finding regarding the validity of a settlement agreement is against the manifest weight of the evidence only if " 'an opposite conclusion is clearly apparent or the fact-finder's finding is palpably erroneous and wholly unwarranted.' " *Kulchawik v. Durabla Manufacturing Co.,* 371 Ill. App. 3d 964, 969 (2007) (quoting *Joel R. v. Board of Education of Mannheim School District 83*, 292 Ill. App. 3d 607, 613 (1997)).

¶ 20    Initially, we consider Raymond's contention that the parties never reached a valid settlement agreement within the supplemental judgment. The record supports a finding that the settlement agreement contained in the supplemental judgment for dissolution of marriage was the product of court-supervised settlement negotiations. We note that Judge Dinn's July 28, 2021, docket entry indicated that Raymond refused to sign the supplemental agreement. In granting Andrea's attorney's oral motion to enforce, however, Judge Dinn noted that the parties made several modifications to the agreement to the benefit of Raymond, which Raymond approved. The court also noted that the written supplemental judgment reflected the agreement of the parties stated to the court during prior negotiations on June 30, 2021, and July 21, 2021.

¶ 21    With regard to the June 30, 2021, settlement conference, Raymond argues that an agreement did not exist because the docket entry stated that the parties had a proposed, not actual, agreement. Without further argument, Raymond states that this docket entry "[c]learly" demonstrates "there was not mutuality of an agreement otherwise there would have been an actual settlement." Although we recognize that the record demonstrates the existence of a proposed agreement on June 30, 2021, the record supports a finding that further negotiations took place

9

between the parties' attorneys in the presence of Judge Dinn after that date. Moreover, it appears from the record that the parties set forth a proposed agreement to provide Raymond the opportunity to review the agreement with his bankruptcy attorney before the parties finalized the agreement.

¶ 22    In addition, with regard to the July 21, 2021, conference, Raymond asserts, without further argument, that it "is clear there was no agreement" because "there is no note of terms of a settlement being discussed" between the parties' attorneys and Judge Dinn. Importantly, the record before this court does not contain a transcript of the July 28, 2021, hearing, a bystander's report, or an agreed statement of facts concerning the settlement conferences in June and July 2021. We note that our supreme court has held that appellants bear the burden of providing a sufficiently complete record to support their claim or claims of error, and in the absence of such a record on appeal, we will presume that the order entered by the circuit court was in conformity with law and had sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Id.* at 392. Because no record of the July 21, 2021, discussions between Judge Dinn and the parties' attorneys exists, there is no basis upon which to contradict the circuit court's stated recollection regarding the agreement of the parties on July 21, 2021. See *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 308-09 (2009) (trial judge possessed personal knowledge of the parties' oral settlement discussions and could draw on that knowledge to resolve the factual issue of whether the parties had agreed to settle).

¶ 23    Similar to *K4 Enterprises, Inc.* (*id.* at 312), here, Judge Dinn possessed personal knowledge of the extensive settlement discussions that occurred on June 9, June 30, July 21, and July 28, 2021. As such, we cannot conclude that Judge Dinn's presence and his conclusion that the parties reached an agreement is insufficient to ensure that a contract was entered into by the parties.

10

Rather, Judge Dinn was in a position to resolve any disputes as to whether an agreement was in fact reached. See *Rose*, 343 Ill. App. 3d at 1097 ("When parties reach a settlement agreement during a court-mandated settlement conference conducted in the judge's chambers and state the terms of the agreement in the judge's presence, there is no danger of enforcement of a contract which was, in fact, never made. This is so even if no transcript or written order memorializing the agreement is prepared on the date the agreement is reached. The possibility of fraud is negated in that the trial judge can *** resolve any disputes as to whether an agreement was in fact reached or the content of that agreement.").

¶ 24    In conclusion, the record supports the circuit court's finding that the parties entered a valid settlement agreement by which both are bound and that the court properly enforced it. Accordingly, the court's decision in that regard is not against the manifest weight of the evidence.

¶ 25    We next observe that Raymond raises the issues of unconscionability of the agreement and commingling and transmutation of nonmarital assets for the first time on appeal. We note that Andrea argued forfeiture regarding the issue of unconscionability. Issues not raised in the circuit court generally are forfeited and may not be raised for the first time on appeal. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). Accordingly, we agree with Andrea that Raymond forfeited this issue. Andrea, however, failed to address the issue concerning commingling and transmutation. We note that the forfeiture rule is a limitation on the parties, not a limitation on the jurisdiction of this court. *Pennymac Corp. v. Jenkins*, 2018 IL App (1st) 171191, ¶ 23. As such, this court may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent. *Id.* Accordingly, in order to obtain a just result in the instant case, we will excuse Raymond's forfeiture as it pertains to the court's determination that Raymond's commingled nonmarital assets transmuted to marital property.

11

¶ 26    Raymond argues that the circuit court's determination that Raymond's commingled nonmarital assets transmuted to marital property was against the manifest weight of the evidence. For support, Raymond asserts that the court's September 18, 2018, order prejudiced him, where the court ordered the establishment of a Trust, requiring that Raymond deposit his portion of marital and nonmarital assets from the sale proceeds of real estate and farm equipment with Andrea's portion of marital assets from the same sale of assets. We agree with Raymond.

¶ 27    All property of the parties to a marriage belongs to either the estate of the husband, the estate of the wife, or the marital estate. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641-42 (1993). Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) requires the circuit court to classify property as either marital or nonmarital in order to assign or divide it upon a marriage dissolution. 750 ILCS 5/503 (West 2020). A circuit court's classification of property as marital or nonmarital will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *In re Marriage of Berger*, 357 Ill. App. 3d 651, 659-60 (2005).

¶ 28    Transmutation occurs when marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property. 750 ILCS 5/503(c)(1) (West 2020). " 'The rationale for this rule is that the spouse's "failure to properly segregate nonmarital property, by commingling it with marital property, evinces an intent to treat the former as part of the marital estate." ' " *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 74 (quoting *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 672-73 (2008), quoting *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 154 (2005)). "The principle of transmutation is based on the presumption that the owner of the nonmarital property intended to make a gift of the property to the marital estate." *In re Marriage of Olson*, 96 Ill. 2d 432, 439 (1983). This presumption in dissolution proceedings may still be rebutted by the " 'donor' "

12

spouse with "clear, convincing and unmistakable evidence." *In re Marriage of Rink*, 136 Ill. App. 3d 252, 257 (1985) (quoting *In re Marriage of Severns*, 93 Ill. App. 3d 122, 125 (1981), and citing *In re Marriage of Wingader*, 95 Ill. App. 3d 9 (1981)).

¶ 29 Moreover, there is no presumption that commingled property is always transmuted into marital property. *Foster*, 2014 IL App (1st) 123078, ¶ 93 ("the legislature rejected the presumption that commingled property was always transmuted into marital property" (citing *In re Marriage of Henke*, 313 Ill. App. 3d 159, 168 (2000)). "That nonmarital funds were deposited into a marital account does not establish beyond question that the funds were transmuted into marital property." *In re Marriage of Steel*, 2011 IL App (2d) 080974, ¶ 72. Rather, nonmarital property can maintain its identity even when deposited into a marital account. *Id.* ¶ 81. Whether nonmarital funds have lost their identity through commingling requires attention to the specific history of those funds. *Id.*

¶ 30 After reviewing the record in the instant case, the circuit court's classification of the balance of the Trust as transmuted marital property was against the manifest weight of the evidence. The case at issue does not involve a situation where Raymond, himself, intentionally or inadvertently failed to properly segregate his nonmarital property by commingling it with marital property. The record does not demonstrate evidence that Raymond possessed an intent to treat his nonmarital assets as marital property (*Wojcik*, 362 Ill. App. 3d at 154 ("failure to properly segregate nonmarital property, by commingling it with marital property, evinces an intent to treat the former as part of the marital estate"); see also *Heroy*, 385 Ill. App. 3d at 673), or that he possessed donative intent to gift his marital and nonmarital assets to the Trust (*In re Marriage of Schmidt*, 242 Ill. App. 3d 961, 968 (1993) ("A valid gift requires proof of donative intent and delivery of subject matter.")). Rather, it is undisputed that Raymond complied with the court's order that required him to commingle his nonmarital assets and the parties' marital assets from the

sale proceeds of real estate and farm equipment. Had the court not ordered Raymond to deposit his portion of the marital estate and his designated nonmarital assets in the Trust, no alleged commingling or transmutation would have occurred.

¶ 31    Andrea urges this court to view Raymond's misconduct, which necessitated the circuit court's decision to establish the Trust and commingle marital and nonmarital assets, as significant and discrediting to Raymond's argument on appeal. Section 503(d) of the Act specifically prohibits the court from considering marital misconduct when dividing marital property. 750 ILCS 5/503(d) (West 2020) ("In a proceeding for dissolution of marriage ***, the court shall assign each spouse's non-marital property to that spouse" and "shall divide the marital property without regard to marital misconduct in just proportions."). Accordingly, Andrea's argument fails.

¶ 32    To rule against Raymond in the instant case would contravene the principles of transmutation, which is "based on the presumption that the owner of the nonmarital property intended to make a gift of the property to the marital estate." *Olson*, 96 Ill. 2d at 439. The record simply does not demonstrate that Raymond, the owner of specific nonmarital assets outlined in several stipulations before the circuit court, intended to gift his nonmarital assets or commingle his nonmarital assets as part of the marital estate. Accordingly, we reverse the court's order denying Raymond's motion to vacate and remand the cause to the circuit court to conduct an evidentiary hearing to determine the specific history of the funds in the Trust and what percentage of the remaining funds constitute Raymond's nonmarital property.

¶ 33                                III. Conclusion

¶ 34    For the foregoing reasons, we affirm, in part, the judgment of the circuit court of Hamilton County granting Andrea's motion to strike and dismissing Raymond's motion to vacate, where the court determined a valid and enforceable agreement existed. We, however, reverse, in part, the

14

court's finding that Raymond's nonmarital assets transmuted to marital property and remand for further proceedings.

¶ 35    Affirmed in part and reversed in part; caused remanded.